IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| CHARLES VITITOE and LENA VITITOE, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| BRIDGESTONE AMERICAS TIRE OPERATIONS, INC., ACCURIDE CORPORATION, *formerly Firestone Steel Products Division*, ACCURIDE DE MEXICO, S.A. de C.V., FLEXI-VAN LEASING INC., INTERMODAL BRIDGE TRANSPORT INC. d/b/a IBT, | ) | No. 2:12-cv-1844-DCN |
| | ) | |
| Defendants. | ) | |
| | ) | **ORDER** |
| FLEXI-VAN LEASING, INC., | ) | |
| | ) | |
| Defendant/ Third-Party Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| INTERSTAR NORTH AMERICA, INC. and CONTAINER MAINTENANCE CORPORATION, | ) | |
| | ) | |
| Third- Party Defendants. | ) | |

The following matter is before the court on InterStar North America, Inc.'s ("InterStar") amended motion for attorney's fees and costs, ECF No. 339. For the reasons set forth below, the court grants InterStar's motion for fees and costs and orders Flexi-Van Leasing, Inc. ("Flexi") to pay InterStar in the amount of $135,766.00 in attorney's fees and $10,663.13 in costs and expenses, for a total of $146,429.13.

1

## I. BACKGROUND

This action arises out of injuries Charles Vititoe incurred while attempting to repair a flat tire on an intermodal container chassis. Defendant and third-party plaintiff Flexi is a Delaware corporation which, at all times relevant to the instant action, was in the business of leasing intermodal container chassis. Flexi owned the chassis involved in this action (the "Chassis"). In 2003, Flexi began leasing the Chassis to Zim America Israeli Shipping Co. ("Zim"), who then contributed the Chassis to the South Atlantic Consolidated Chassis Pool ("SACP") via a Master Contribution Agreement on October 1, 2008.[1] Flexi contracted with SACP to act as manager of the pool. As manager, Flexi was required to enter into maintenance and repair contracts with vendors on SACP's behalf. ECF No. 177, Flexi Mot. Ex. B-6, at 22.

Acting in its capacity as manager, Flexi entered into a Master Maintenance and Repair Agreement (the "Repair Agreement") with third-party defendant InterStar in September 2009, pursuant to which InterStar agreed to provide maintenance and repair services for all chassis included in the chassis pool. ECF No. 184, InterStar Mot. Ex. A, Repair Agreement. InterStar further agreed that these services would be "performed in a professional, careful and workmanlike manner," and represented that it had "the qualified personnel, equipment, expertise and experience to perform [such services] and its obligations under [the] [A]greement." Id. §§ 1.2, 5.1. The Repair Agreement also contained an indemnification provision, obligating InterStar to indemnify Flexi "from and against any and all" of the following:

---

[1] A chassis pool is effectively a network of chassis which different users access through different agreements. The chassis pool in this case was a "cooperative chassis pool," meaning the chassis in the pool were only available to pool members.

> [C]laims, liabilities, suits, demands, causes of action, damages adjudged due or claims reasonably settled, penalties, fines, costs and expenses (including without limitation reasonable attorneys' fees) arising from or in connection with:
>
> (i) The negligence, gross negligence, or willful misconduct by [InterStar] or its employees, agents, subcontractors, or any other person or entity acting under [InterStar's] direction or control (collectively "Vendor Parties"); and
>
> (ii) The breach of this Agreement by any one or more of the Vendor Parties (including without limitation a breach of any of [InterStar's] representations, warranties, and covenants in this Agreement).

Id. § 6.2. The Repair Agreement was later amended to authorize InterStar to subcontract its duties under the agreement. Id. Thereafter, InterStar contracted with independent tire service vendors, including Vititoe, to perform the services required under the Repair Agreement.

On March 31, 2010, InterStar dispatched Vititoe to replace the right rear inner dual tire on the Chassis. To get to the inner dual tire, Vititoe was required to remove the outer dual wheel assembly (the "Wheel Assembly"). Vititoe was using an impact wrench to loosen the lug nuts on the outer wheel when the Wheel Assembly explosively separated. The force of the explosion caused the rim base and outer dual tire to break free from the axle and violently slam into Vititoe's head, face, and body. Vititoe was knocked backward approximately 15 feet and was rendered unconscious. As a result, Vititoe suffered various debilitating, life-threatening, and permanent injuries.

Vititoe and his wife, Lena Vititoe (together, the "Vititoes"), filed an action in the Charleston County Court of Common Pleas in May of 2012. The case was removed to this court on July 3, 2012. The amended complaint was filed on August 23, 2012, bringing causes of action under South Carolina law for (1) breach of implied warranties,

(2) failure to warn, (3) negligence, and (4) loss of consortium against Flexi.[2]  Am. Compl. ¶¶ 33–56.  On August 29, 2013, Flexi-Van filed a third party complaint against InterStar, bringing causes of action for (1) breach of contract, (2) contractual indemnity, (3) equitable indemnity, (4) negligent hiring, (5) negligent supervision, and (6) negligent training.  On December 14, 2015, the Vititoes' action against Flexi was dismissed pursuant to a settlement between the parties.  ECF No. 220.

On January 7, 2016, the third-party action was bifurcated from the Vititoes' claims against the remaining defendants.  ECF No. 233.  A trial on the third-party action was held from February 7, 2018 to February 9, 2018, with the jury returning a verdict for InterStar.  On February 28, 2018, InterStar filed an amended motion for attorney's fees and costs.  ECF No. 339.  On May 22, 2018, Flexi filed its response in opposition.  ECF No. 356.  On September 9, 2018, InterStar filed a reply, upon the court's instruction, to fully address the issues raised in Flexi's response.  ECF No. 378.  The motion has been fully briefed and is now ripe for the court's review.

## II.  STANDARD

Federal Rule of Civil Procedure 54(d)(1) provides that "costs—other than attorney's fees—should be allowed to the prevailing party."  Under the American Rule, each party normally pays its own attorney's fees, absent some statutory or contractual provision stating otherwise.  Key Tronic Corp. v. United States, 511 U.S. 809, 814–15 (1994); see Baron Data Sys., Inc. v. Loter, 377 S.E.2d 296, 297 (S.C.1989) ("The general

---

[2] The amended complaint also contained allegations against Bridgestone Americas Tire Operations, Inc., Bridgestone Americas, Inc., Bridgestone Industrial Products America, Inc., Accuride Corporation, Accuride de Mexico, S.A. de C.V., and Intermodal Bridge Transport, Inc., d/b/a IBT.

rule is that attorney's fees are not recoverable unless authorized by contract or statute."). If a ground exists for payment of attorney's fees then "a claim for attorney's fees and related nontaxable expenses must be made by motion unless the substantive law requires those fees to be proved at trial as an element of damages." Fed. R. Civ. P. 54(d)(2).

### III. DISCUSSION

InterStar asks that the court to order Flexi to pay the costs and attorney's fees that InterStar incurred in defending the third-party complaint brought against it by Flexi. InterStar bases its motion on the Repair Agreement it entered into with Flexi, which provides that:

> If a party to this Agreement brings an action to enforce any provisions of this Agreement against the other . . . the prevailing party shall be entitled, in addition to any other rights or remedies available to it, to collect from the non-prevailing party the <u>reasonable costs and expenses incurred in the investigation preceding such action and the prosecution of such action, including but not limited to reasonable attorney's fees and court costs</u>.

ECF No. 184, Ex. A, Repair Agreement § 10.12 (emphasis added). The Repair Agreement also states that it "shall be governed by and construed in accordance with the laws of the State of New Jersey." Id. § 10.11. The jury returned a verdict in favor of InterStar for every count, rendering InterStar the prevailing party. The court must now determine, under the language of the Repair Agreement, whether to grant InterStar its requested amount in costs and attorney's fees.

#### A. Attorney's Fees

Each party to litigation is required to pay its own attorney's fees unless a particular statute or an agreement between the parties provides otherwise. Key Tronic Corp., 511 U.S. at 814–15. "As a general rule, contracts which permit the aggrieved party to recover fixed or reasonable attorney's fees as part of his or her damages are

5

enforceable unless some larger public policy mandates a contrary result." Center Grove Assocs. v. Hoerr, 146 N.J. Super. 472, 474 (App. Div. 1977). "When fee shifting is permissible—as here, by contract—a court must ascertain the 'lodestar,' that is, the number of hours reasonably expended by the successful party's counsel in the litigation, multiplied by a reasonable hourly rate." Grow Co. v. Chokshi, 424 N.J. Super. 357, 367 (App. Div. 2012) (internal quotation marks omitted). "The computation of the lodestar mandates that the trial court determine the reasonableness of the hourly rate of the prevailing attorney in comparison to rates for similar services by lawyers of reasonably comparable skill, experience, and reputation in the community." Litton Indus., Inc. v. IMO Indus., Inc., 200 N.J. 372, 387 (2009) (internal quotation marks omitted).

Here, the Repair Agreement specifically provides for attorney's fees for the prevailing party, InterStar. The court finds that the hourly rates of InterStar's attorneys at Kernodle Root & Coleman were reasonable. From the time the law firm joined this litigation on behalf of InterStar in 2013 until February 2017, the firm charged hourly rates of $130.00 for partners and $60.00 for paralegals. ECF No. 378 at 3. Beginning in February 2017, the firm increased the hourly rates to $145.00 for partners, $130.00 for associates, and $75.00 for paralegals. Id. Both of the partners involved in this matter have over 15 years of legal experience, the associate attorneys have over 10 years of experience, and the paralegal who assisted has over 25 years of experience. Id. The court finds this fee rate to be reasonable considering the fees "customarily charged in [Charleston] for similar legal services; [ ] the amount of time involved and the results

obtained; . . . and the experience, reputation, and ability of the [ ] lawyers performing the service."[3] Litton, 200 N.J. at 387.

The court also finds that InterStar's counsel expended a reasonable number of hours on this matter. InterStar has expended roughly 1,000 hours on this case over the last five years. Almost half of that time was devoted to writing motions, attending hearings on those motions, and preparing for and litigating at trial. InterStar also expended about 300 hours on discovery and depositions, which is not surprising given the long and complicated nature of this case.

The court finds both the hourly rate and the number of hours expended to be reasonable and grants InterStar's request for attorney's fees in the amount of $135,766.00.[4]

### B. Costs and Expenses

Costs are generally allowed to the prevailing party. Fed. R. Civ. P. 54(d)(1). "Although 'costs' has an everyday meaning synonymous with 'expenses,' the concept of taxable costs under Rule 54(d) is more limited." Taniguchi v. Kan Pac. Saipan, Ltd., 566

---

[3] Indeed, the court finds that these hourly rates are surprisingly low.
[4] The court grants $135,766.00 in attorney's fees because that is the amount InterStar requests in its amended motion for costs and attorney's fees. ECF No. 339-3, Ex. C, Am. Affid. in Support of Cost and Attorney's Fees. That motion indicates the amount in attorney's fees that InterStar incurred from the beginning of litigation up to February 28, 2018. On September 10, 2018, InterStar submitted its reply in support of the motion. ECF No. 378. With this reply, InterStar attached a list of all of the hours expended on this case from March 1, 2018 until September 10, 2018. ECF No. 378-3, Ex. C. However, the court is unable to calculate the additional amount in attorney's fees that InterStar incurred since March 1, 2018 because InterStar has not told the court which of these hours were performed by partners, associate attorneys, or paralegals, all of whom work at different hourly rates. Thus, due to InterStar's failure to provide the court with an updated request for a specific amount of attorney's fees, the court relies on the amount of $135,766.00 as listed in its amended motion for costs and attorney's fees.

U.S. 560, 573 (2012) (quoting 10 C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2666, pp. 202–203 (3d ed.1998)).  Rather than encompassing all litigation expenses, the term "costs" in Rule 54(d) refers to those items listed in 28 U.S.C. § 1920:

> (1) Fees of the clerk and marshal;
> (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
> (3) Fees and disbursements for printing and witnesses;
> (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
> (5) Docket fees under section 1923 of this title;
> (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920.

Flexi does not dispute the validity of the Repair Agreement; rather, Flexi claims that many of the requested costs and expenses are not allowed under New Jersey law. Section 22A:2-8 of the New Jersey Statutes allows a prevailing party to pursue the following costs:

> The legal fees of witnesses, including mileage for each attendance, masters, commissioners and other officers;
> The costs of taking depositions when taxable, by order of the court;
> The legal fees for publication where publication is required;
> The legal fees paid for a certified copy of a deposition or other paper or document, or map, recorded or filed in any public office, necessarily used or obtained for use in the trial of an issue of fact or the argument of an issue of law, or upon appeal, or otherwise;
> Sheriff's fees for service of process or other mandate or proceeding;
> All filing and docketing fees and charges paid to the clerk of court;
> Such other reasonable and necessary expenses as are taxable according to the course and practice of the court or by express provision of law, or rule of court.

N.J. Stat. Ann. § 22A:2-8. The parties dispute whether § 22A:2-8 allows for the recovery of costs for depositions, expert fees, service of process, and travel costs.[5] ECF No. 356 at 9. While Flexi may be correct that certain requested items might not qualify as taxable costs under N.J.S.A. 22A:2-8 or under 28 U.S.C. § 1920, the question currently before the court is not whether certain items qualify as taxable costs under state or federal statutes. InterStar is not seeking traditional taxable costs that are automatically granted to every prevailing party under Rule 54(d)(1). Rather, InterStar is seeking reimbursement according to its agreement with Flexi that the prevailing party in any litigation would receive "the reasonable costs and expenses incurred" in that litigation. ECF No. 184, Ex. A, Repair Agreement § 10.12. "The 'costs' authorized by Rule 54(d)(1) is a term of art not synonymous with expense. [ ] In other words, expense includes all the expenditures actually made by a litigant in connection with the lawsuit." Eagle Ins. Co. v. Johnson,

---

[5] As a general rule "deposition costs are not [ ] recoverable as taxed costs." Buccinna v. Micheletti, 311 N.J. Super. 557, 564–65 (N.C. App. Div. 1998). However, courts may award depositions costs in "extraordinary circumstances," such as when an action for fraud is successfully pursued. Mukhoti v. Mercedes-Benz USA, L.L.C., 2010 WL 2346969, at *2–4 (N.J. Super. Ct. App. Div. June 11, 2010), see also Finch, Pruyn & Co. v. Martinelli, 108 N.J. Super. 156, 158 (Ch. Div. 1969) ("N.J.S.A. 22A:2-8 must contemplate that in certain cases justice will require that the losing party bear the expense of depositions taken during the course of the proceedings."). In these extraordinary circumstances, courts will generally only allow costs for depositions that were "necessary and [ ] actually used at the trial." Beck v. Lampf, Lipkind, Prupis & Petigrow, P.C., 273 N.J. Super. 462, 463–67 (N.J. Law. Div. 1993) (quoting Finch, 108 N.J. Super at 160). Section 22A:2-8 clearly allows for costs associated with service of process and for copies. However, the statute does not provide for expert fees or for costs associated with a corporate representative's attendance at trial. See Buccinna, 311 N.J. Super at 565 ("The fees charged by experts are clearly not taxable costs under N.J.S.A. 22A:2-8"), A.J. Tenwood Assocs. v. Orange Senior Citizens Hous. Co., 200 N.J. Super. 515, 532 (App. Div. 1985) ("[W]here the testifying officer or director is an actual party in interest, attends court as a corporate representative, or otherwise is identifiable as a party in interest, the courts generally will deny witness fees for the officer or employee.").

982 F. Supp. 1456, 1458 (M.D. Ala. 1997), aff'd sub nom. Eagle Ins. v. Johnson, 162 F.3d 98 (11th Cir. 1998) (quoting 10 James Wm. Moore et al., Moore's Federal Practice § 54.103, at 54–174). "Parties to a contract are free to allocate among themselves the costs of litigation arising from the contract." Hancock v. Chicago Title Ins. Co., No. 2013 WL 2391500, at *13–14 (N.D. Tex. June 3, 2013). In Hancock, the court found that the defendant was "seeking contractually-awarded expenses rather than taxable costs" due to the contract language allowing the prevailing party "to recover reasonable attorneys' fees, administrative costs and other costs incurred in that action or proceeding." Id.; see also Great White Fleet (US) Ltd. v. DSCV Transport, Ltd., 2002 WL 523355, at *1 (E.D. La. Apr. 3, 2002) ("[B]ecause legal costs were awarded pursuant to the terms of a contract between the parties—and not because they were taxable costs awarded to the prevailing party under the law—they are recoverable under the contract."), First Fed. Sav. & Loan Ass'n of Rochester v. United States, 88 Fed. Cl. 572, 597 n. 12 (Fed.Cl. 2009) (finding that "the Financing Agreement authorizes the recovery of 'other costs [reasonably] incurred' [and] is not limited to the categories of costs set forth in § 1920.").

The Repair Agreement explicitly provides that the prevailing party shall be entitled to collect both the reasonable costs and the reasonable <u>expenses</u> of the litigation. The court finds it significant that the parties included the term "expenses" in addition to "costs" in their contract. The Repair Agreement also clearly states that the amount that the prevailing party might recover is "<u>not limited</u> to reasonable attorney's fees and court costs," indicating the parties' intent that the prevailing party might receive expenses beyond the traditional court costs. ECF No. 184, InterStar Mot. Ex. A, Repair Agreement

(emphasis added). Further, the Repair Agreement specifies that the prevailing party should be compensated for all expenditures it made during the "investigation preceding" any litigation and in the "prosecution of such action." This contrasts many of the New Jersey cases cited by the parties, in which the courts found that only those depositions that were actually used at trial could be considered a taxable cost. Here, the contract specifically includes any expenses from the investigation before the commencement of litigation, in addition to expenses incurred during litigation.

Thus, if the court determines that the costs and expenses requested by InterStar are "reasonable," then it must grant those costs and expenses to InterStar in order to give effect to the wishes of the parties as expressed in the Repair Agreement, even if those expenses go beyond traditional taxable costs. InterStar has incurred $10,663.13 in costs and expenses in its defense of Flexi's claims and in pursuit of its counter-claim against Flexi. ECF No. 378-4, Ex. D and 378-5, Ex. E. InterStar's charts of its costs and expenses in Exhibits D and E are supported by the law firm's quarterly invoices, which were submitted to the court for in camera review. They include: $2,082.05 worth of deposition transcripts for nine people; $134.27 to obtain medical records; $111.55 to obtain a hearing transcript; $3,896.55 for the three mediations that the parties attended; $134.63 for juror questionnaires; $3,897.28 for trial expenses, including trial exhibits, witness video transcript, trial witness fees, travel expenses for the corporate representatives, and other miscellaneous costs; and $406.80 worth of trial testimony transcripts which InterStar required in order to respond to Flexi's motion for judgment as a matter of law. The court finds these to be reasonable expenditures for a case of this

length and complexity that resulted in a three-day trial. Thus, the court grants InterStar's requested costs and expenses.

## IV.   CONCLUSION

Based on the foregoing, the court **GRANTS** InterStar's motion and orders Flexi to pay InterStar $135,766.00 in attorney's fees and $10,663.13 in costs and expenses, for a total of $146,429.13.

**AND IT IS SO ORDERED.**

_____
**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**September 20, 2018**
**Charleston, South Carolina**